IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CARRIE LAURNETTE ALLEN, et al., §
 §
             Plaintiffs, §
 § Civil Action No. 3:16-CV-1219-D
VS. §
 §
FLUOR CORPORATION, §
 §
 §
             Defendant. §

MEMORANDUM OPINION
AND ORDER

Defendant Fluor Corporation's ("Fluor's") motion to dismiss presents the dispositive question whether, under the Afghanistan Labor Code, Fluor can be held liable to the United States citizen plaintiffs in this case for unpaid overtime pay. Concluding that Fluor cannot—because the Code applies only to foreign citizens who, unlike the plaintiffs here, have obtained or will obtain work permits—the court grants Fluor's motion and dismisses this case with prejudice.

I

This is a putative class action by United States citizen plaintiffs seeking unpaid overtime pay under provisions of Article 67 of the Afghanistan Labor Code. Plaintiffs' employer, Fluor,[1] contracted with the U.S. Army to provide noncombat logistical support.

---

[1]Fluor Corporation is the only named defendant. Fluor Corporation appeared and responded to the instant motion, but states that plaintiffs were actually employed by Fluor Federal Global Projects, Inc. At the hearing on Fluor's motion, plaintiffs represented that they would join additional defendants, if necessary.

Plaintiffs[2] allege that they are past or present non-managerial, hourly Fluor employees who worked as Tier II FGG Contractors on the Logistics Civil Augmentation Program IV – Task Order 5 ("LOGCAP IV") contract, providing civilian support in the form of construction, housing, transportation, fuel, meal, or laundry services for U.S. soldiers serving in Afghanistan.[3] They assert that Fluor paid them an annual "salary" of $45,000, classified them as exempt from overtime wages, paid them at a straight time rate for overtime hours worked rather than at the premium overtime rates required by Afghanistan law, and required that they work twelve hours per day, seven days per week, without overtime premium pay. Plaintiffs aver that, despite their classification as "exempt," their weekly compensation was paid at an hourly rate and that they performed duties typically performed by hourly, non-

---

[2]The named plaintiffs are Carrie Laurnette Allen, Kimberly Leonard, Tamika Payne, Larry Bailey, and Meagan Caldwell.

[3]In deciding Fluor's Fed. R. Civ. P. 12(b)(6) motion, the court construes plaintiffs' first amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).
A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).

exempt employees. They allege that the exempt classification and resulting failure to pay them overtime pay for overtime hours worked is unlawful because they do not satisfy the requirements of any applicable exemption to overtime laws.

The Afghanistan Labor Code sets an ordinary working period of 40 hours per week, and requires that employers pay a premium of 25% of the hourly wage (on work days) or 50% of the hourly wage (on weekends or holidays) for overtime hours worked. Plaintiffs allege that the Bilateral Security Agreement ("BSA") between the United States of America and Afghanistan, and the Status of Forces Agreement ("SOFA")[4] regarding North Atlantic Treaty Organization ("NATO") activities in Afghanistan, subject U.S. government contractors to Afghan law.

Plaintiffs bring this action on behalf of themselves and a class composed of the following:

> All United States citizens who are working or have worked as Tier II employees for Defendant in Afghanistan under the LOGCAP IV — Task Order 5 contract, and who were paid straight time rates for overtime work hours and not paid on a salary basis in any week during the period commencing June 1, 2008 through the entry of final judgment in this action.

1st Am. Compl. ¶ 24. They assert one cause of action, alleging that Fluor is liable for violating Article 67 of the Afghanistan Labor Code based on its failure to pay them overtime

---

[4]The full style of this document is "Agreement Between the North Atlantic Treaty Organization and the Islamic Republic of Afghanistan on the Status of NATO Forces and NATO Personnel Conducting Mutually Agreed NATO-Led Activities in Afghanistan." Ps. App. 310.

compensation.

Fluor moves to dismiss.[5] Although Fluor's motion cites only Fed. R. Civ. P. 12(b)(6), its contentions also raise issues of subject matter jurisdiction under Rule 12(b)(1). Plaintiffs oppose the motion. The court has heard oral argument.

II

The court begins by setting out the standards that apply to Fluor's requests for relief under Rule 12(b)(1) and 12(b)(6).

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege

---

[5]This is Fluor's second motion to dismiss plaintiffs' first amended complaint. When Fluor initially moved to dismiss the first amended complaint, for the purpose of reducing delay and expense, the court denied the motion without prejudice, and permitted plaintiffs to evaluate Fluor's motion to dismiss and either file a second amended complaint or adopt their first amended complaint. Plaintiffs elected to stand on their first amended complaint, and Fluor responded by filing the instant amended motion to dismiss that the court now addresses.

jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of plaintiffs' first amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and brackets omitted). To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting

Rule 8(a)(2)) (brackets omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court turns first to Fluor's contention that this dispute is a political question that is unsuitable for judicial resolution.

A

"Invocation of the political question doctrine implicates the district court's jurisdiction. [Federal courts] are duty-bound to examine the basis of subject matter jurisdiction[.]" *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (internal quotation marks omitted). "The political-question doctrine forecloses as nonjusticiable actions which would improperly require judicial review of decisions exclusively within the purview of the political branches of government." *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*, 853 F.3d 173, 178 (5th Cir. 2017). "[T]he Supreme Court identified 'formulations' that may help determine whether a particular case raises a political question," *Lane*, 529 F.3d at 558 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)):

> (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department;"
> (2) "a lack of judicially discoverable and manageable standards for resolving it;"
> (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;"
> (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;"
> (5) "an unusual need for unquestioning adherence to a political decision already made;"
> (6) "or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Id.* (quoting *Baker*, 369 U.S. at 217). "[M]atters implicating foreign relations and military affairs are generally beyond the authority or competency of a court's adjudicative powers . . . . But, obviously, it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Kuwait Pearls Catering*, 853 F.3d at 179 (citations and internal quotation marks omitted).

B

Fluor contends that the use and cost of contractors in a theater of war is a sensitive military matter that should be insulated from judicial scrutiny. It posits that opening contractors to liability under local employment law could unacceptably increase their costs, leading either to increased cost to the government or to scarcity of contractor services. Fluor also maintains that other branches of government have already spoken to the issues raised in plaintiffs' claim, including by stating a preference for nonjudicial dispute resolution in the BSA. And Fluor contends that U.S. courts are ill-suited to decide questions of Afghan law, which derives from a different legal culture and regulates a much different economy.

Plaintiffs respond that their claim is suited to judicial resolution because it is an employment dispute between a private company and its employees, which does not significantly touch on U.S. military operations or foreign affairs. Plaintiffs posit that coordinate branches of government have not, in fact, addressed the question whether contractor employees in Afghanistan are entitled to overtime pay. Plaintiffs dispute Fluor's characterization of the BSA, and contend that neither the United States nor Afghanistan has taken a position on the application of Afghan labor law to U.S. contractor employees.

C

The court concludes that resolution of plaintiffs' cause of action does not require an impermissible judicial review of military or foreign affairs decisions. The Fifth Circuit has twice held that the political question doctrine did not prevent federal courts from resolving suits against private military contractors, *see Lane*, 529 F.3d at 568; *Kuwait Pearls Catering*, 853 F.3d at 184, and, for similar reasons, the court holds that this doctrine does not deprive it of jurisdiction in this case.

First, no textually demonstrable commitment to a coordinate branch of government is evident in this case, because the issue of Fluor's employment practices is well removed from the war and foreign policy decisions that the Constitution commits to the executive branch. *See Lane*, 529 F.3d at 560 (holding that tort claim against contractor did not invoke textual commitment factor because, *inter alia*, it did not require reexamination of military decisions).

Second, plaintiffs' claim does not lack judicially discoverable and manageable

standards for resolution, because it turns on the interpretation of foreign law and its application to Fluor's overtime policy, which are matters within the competence of a federal court. *See, e.g.*, *McGee v Arkel Int'l, LLC*, 671 F.3d 539, 549 (5th Cir. 2012) (applying Iraqi law to negligence claim against contractor).

Third, resolution of this case does not require an initial policy determination by a nonjudicial actor, because the relevant military policies—operations in Afghanistan, and the employment of contractors to support the military mission there—have already been determined, and their propriety is not disputed in this case. *See Lane*, 529 F.3d at 563.

Fourth, the court's independent resolution of this dispute will not express a lack of respect for a coordinate branch of government, because a correct application of Afghan law, under all applicable international agreements, will not contradict or rebuff any previous action by the executive. *See Kuwait Pearls Catering*, 853 F.3d at 184 (holding that fourth factor was not implicated because government had not taken sides in the private dispute).

Fifth, this case does not present an unusual need for unquestioning adherence to a political decision, because the political branches do not appear to have addressed this issue in a final decision.

Sixth, for the same reasons already stated, the court's resolution of this case will not lead to embarrassment from multiple pronouncements by different departments on one question.

Accordingly, this case does not present a nonjusticiable political question, and the court declines to dismiss plaintiffs' lawsuit for lack of jurisdiction on this ground.

IV

The court next addresses Fluor's contention that the court lacks jurisdiction to apply Afghan law to conduct that occurred before the BSA and SOFA took effect on January 1, 2015.

A

Fluor contends that, as a contractor accompanying the U.S. armed forces in a foreign country, it is entitled to immunity from the application of foreign law unless the United States provides otherwise by international agreement. *See Coleman v. Tennessee*, 97 U.S. 509, 518 (1878) (holding that enemy nation lacks jurisdiction over members of invading army); *see also Dow v. Johnson*, 100 U.S. 158, 170 (1879) (holding that civil law of invaded country does not govern members of invading army); *Ford v. Surget*, 97 U.S. 594, 605 (1878) (holding that Confederate civilian was not liable under civil law for act of war—burning cotton to prevent it from falling into hands of Union forces). Fluor maintains that this immunity is a jurisdictional bar to the portion of plaintiffs' claim that occurred prior to the adoption of the BSA and SOFA.

Plaintiffs respond that, under principles of sovereignty, U.S. contractors working in Afghanistan are bound by Afghanistan law. *See Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146, 1150-51 (5th Cir. 1985) (accepting parties' agreed position that Saudi law provided rule of decision for U.S. citizen's wrongful termination claim against U.S. company operating in Saudi Arabia). Plaintiffs maintain that this general principle of sovereignty controls unless limited by treaty or international agreement. They posit that one such

agreement, Diplomatic Note 202, was in effect between the United States and Afghanistan before the 2015 adoption of the BSA and SOFA, but did not alter this default rule.

B

The court concludes that Fluor is not entitled to immunity from the application of foreign law based on its status as a private military contractor. The Fifth Circuit has applied Iraqi law to a private military contractor in analogous circumstances, which indicates that the court does not lack subject matter jurisdiction to apply Afghan law in this case. *See McGee*, 671 F.3d at 549. In *McGee* the panel applied the choice of law rules of the forum state (Louisiana) to hold that Iraqi substantive law applied to a negligence claim based on a U.S. contractor's conduct in Iraq. *See id.* at 543. In *McGee*, as in the pre-2015 phase of this case, the court identified no international agreement that ceded jurisdiction over contractors; the court simply applied Iraqi law when required by choice of law rules. *See id.* at 545. And although *McGee* cited some orders of the U.S.-led Coalition Provisional Authority, it considered these provisions to be "effectively a component of Iraqi law." *Id.*

The *en banc* Fourth Circuit has also held that the cases Fluor cites—*Coleman*, *Dow*, and *Ford*—do not support contractor immunity from foreign law. *See Al Shimari v. CACI Intern., Inc.*, 679 F.3d 205, 216 (4th Cir. 2012) (en banc) (holding that contractor liability under Iraqi tort law was not issue of immunity, and thus not appealable as collateral order).

Accordingly, the court concludes that it has subject matter jurisdiction to apply local civil law to a private military contractor that provides noncombat logistical support services of the type at issue here.

V

The court now turns to Fluor's contention that plaintiffs have not stated a claim on which relief can be granted.

A

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Rule 44.1. "The plaintiffs have the burden of proving foreign law." *McGee*, 671 F.3d at 546. They are "'obligated to present to the district court clear proof of the relevant legal principles.'" *Id.* (quoting *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1006 (5th Cir. 1990)) (ellipsis omitted).

B

The parties have submitted English translations of the Afghanistan Labor Code, which differ slightly from each other. The following relevant excerpts are drawn from plaintiffs' translation:

> Application of Labor Law on Foreign Citizens
> Article 6:
>
> (1) Foreign Citizens who have obtained or will obtain later work permit based on previous separate contract or without it in the Islamic Republic of Afghanistan and are appointed in government or non-government, private or joint administrations, have to obey the provisions of this law, and their appointment condition shall be regulated by separate regulation.
> . . .

> Terms of Employment
> Article 13:
>
> . . .
>
> (6) Afghan or foreign employees who are newly employed in administrations shall obtain and present an introduction letter (work permit) from the Ministry of Labor, Social Affairs, Martyrs, and Disabled.

Ps. App. 611-13 (bold font and underlining omitted).

The BSA, as an international executive agreement, has the status of federal law. *See Dep't of Defense v. Fed. Labor Relations Auth.*, 685 F.2d 641, 648 (D.C. Cir. 1982) (citing *B. Altman & Co. v. United States*, 224 U.S. 583, 601 (1912)). The court interprets it according to the same principles that apply to treaties. *See Air Canada v. U.S. Dep't of Transp.*, 843 F.2d 1483, 1486 (D.C. Cir. 1988). The BSA provides, in relevant part:

> ARTICLE 11
> Contracting Procedures
>
> . . .
>
> 2. United States contractors are subject to registration in Afghanistan, via an expedited process that shall include issuance of a business registration license valid for three years and payment of a reasonable, standard, one-time service charge to the Afghanistan Investment Support Agency as required by the laws and regulations of Afghanistan. *United States contractors shall otherwise be exempt from all other Afghan licenses and similar requirements in relation to their entry into or execution of contracts and subcontracts with or on behalf of United States forces.*
>
> . . .
>
> ARTICLE 13
> Status of Personnel
>
> . . .
>
> 6. Afghanistan maintains the right to exercise jurisdiction over United States contractors and United States contractor employees.

Ps. App. 342-44 (italics added; bold font and underlining omitted). The SOFA is identical to the BSA in the relevant provisions, with the exception of substituting the term "NATO" for "United States."

C

Fluor contends that it is not liable under the Afghanistan Labor Code because, according to Article 6(1), the Code applies to foreign citizens only if they obtain a work permit. Fluor maintains that U.S. contractor employees were exempted from obtaining work permits by BSA Article 11(2). Fluor reasons that BSA Article 11(2) requires contractors to register with the Afghanistan Investment Support Agency, but it exempts them "from all other Afghan licenses and similar requirements in relation to their entry into or execution of contracts." Ps. App. 342. Fluor posits that "execution of contracts" in this provision has an ordinary meaning of contract performance, and should not be read as surplusage to "entry into" contracts. Fluor therefore maintains that the BSA exempts its employees from obtaining work permits for any of their work in Afghanistan.

According to Fluor, this interpretation is consistent with guidance that the United States has given to its contractors—a question-and-answer document that explicitly states that Afghan labor law does not apply to U.S. contractors.[6] Fluor also cites an opinion letter

---

[6]This document appears to have been jointly promulgated by the commander of U.S. military forces in Afghanistan and the U.S. embassy in Kabul. Fluor contends that it may be considered when deciding the Rule 12(b)(6) motion as an aid to interpreting an international agreement. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167 (1999) ("Because a treaty ratified by the United States is not only the law of this land, see U.S. Const., Art. II, § 2, but also an agreement among sovereign powers, we have traditionally

from the Afghan Ministry of Justice, which Fluor contends exempts U.S. contractors from the Afghanistan Labor Code.

In response, plaintiffs contend that Afghanistan Labor Code Article 6(1), the provision that Fluor says limits the Code's applicability, is merely a "transitional provision" directed to foreign workers who lacked a work permit when the 2008 code came into effect. Ps. App. 204. Plaintiffs maintain that, because Article 13(6) of the Code requires all foreign workers to obtain a work permit, it would be incorrect to read Article 6(1) as providing an exemption to those who do not.

Plaintiffs take issue with the Afghan Ministry of Justice opinion letter submitted by Fluor because it states no conclusion and only provides that the Afghanistan Independent Bar Association "may resolve the issues" based on the BSA and the Afghanistan Labor Code. D. App. 205. Plaintiffs also criticize the question-and-answer document that Fluor cites, contending that the document has been removed from the originating website, and that the amended version of the document omits the section that Fluor cites.

Plaintiffs next advance a variety of arguments to the effect that Fluor has agreed to abide by Afghan law. In support, they cite their individual employment agreements; Fluor's contract with the United States, and governing regulations, *see* 48 C.F.R. § 252.222-7002 (providing that U.S. contractors overseas shall comply with local labor laws); and Fluor's

---

considered as aids to its interpretation the negotiating and drafting history (*travaux préparatoires*) and the postratification understanding of the contracting parties." (internal quotation marks omitted)).

registration to do business under Afghanistan investment law.

Plaintiffs also contend that another BSA provision, Article 13(6), is similar to language that has previously been held to require the application of Iraqi law to U.S. contractors. *Compare* BSA Article 13(6), Ps. App. 344 ("Afghanistan maintains the right to exercise jurisdiction over United States contractors[.]"), *with Risinger v. SOC LLC*, 936 F.Supp.2d 1235, 1253 (D. Nev. 2013) ("*Risinger I*") ("'Iraq shall have the primary right to exercise jurisdiction over United States contractors and United States contractor employees[.]'" (quoting US-Iraq SOFA)).

D

Based on the evidence of foreign law submitted by the parties, including expert declarations, the court concludes that the Afghanistan Labor Code does not apply to plaintiffs. The Code, by its terms, applies to foreign citizens who have obtained or will later obtain work permits, and not to other foreign citizens.[7]

Plaintiffs do not support their contrary interpretation—that this provision is limited to foreign citizens who lacked work permits at the time of the code's adoption—other than to say that it is "[b]ased on its language." Ps. App. 204. And plaintiffs' contention that this provision is moot—because a separate article requires all foreign citizens to obtain work permits—is unconvincing in light of the facts that U.S. agencies did not believe work permits

---

[7]Although the translated Article 6(1) uses mandatory language concerning "Citizens" obeying the law rather than "employers" obeying the law, the court interprets the provision to limit the Code's application to those employment relationships where the employee has obtained a work permit.

- 16 -

to be required for contractor employees, and plaintiffs do not allege that work permits were or will be obtained. Fluor's interpretation is more consistent with the Afghanistan Labor Code's plain language (as translated into English).

The BSA and its supporting documentation are consistent with this conclusion. The court considers the question-and-answer document cited by Fluor as an indication of the United States' understanding of the BSA after its adoption. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167 (1999). Plaintiffs do not dispute that, at least around the time the BSA was implemented, the U.S. embassy in Kabul and the commander of U.S. military forces in Afghanistan advised U.S. contractors that the Afghanistan Labor Code did not apply to them. *See* Ps. App. 207 (stating that the question-and-answer document, in its versions from April 2015 until June 2015, informed contractors that Afghan labor law did not apply under the BSA). Plaintiffs do not contend that the United States ever contradicted this interpretation.

In summary, the text of Article 6(1) and Fluor's expert's interpretation show that the Afghanistan Labor Code exempts foreign workers who do not obtain work permits. This limitation applied both before and after the adoption of the BSA by the United States and Afghanistan, because the limitation is within the Code itself. And the regime established by the BSA, which explicitly exempts U.S. contractors from all licenses and similar requirements, other than the business registration license, reinforces this conclusion. Because plaintiffs do not allege that they have obtained or will obtain later work permits (as would be expected from the legal framework described), plaintiffs cannot invoke the

remedies in the Afghanistan Labor Code.

Finally, plaintiffs' contentions that Fluor agreed to be bound by Afghan law do not establish any potential liability. The premises for these arguments—that Fluor agreed in employment contracts to follow local law, that Fluor registered under Afghan investment law, and that U.S. regulations require contractors to follow local law—are not alleged in the first amended complaint. Further, none of these rationales for binding Fluor under Afghan law suggests the existence of a private, statutory cause of action to enforce Fluor's compliance. And plaintiffs' citation to *Risinger I* is inapposite because the "primary right to exercise jurisdiction" clause in that case is distinguishable from the "right to exercise jurisdiction" clause in BSA Article 13(6). *See, e.g.*, *Risinger v. SOC LLC*, 2014 WL 804802, at *4 (D. Nev. Feb. 27, 2014) (contrasting primary jurisdiction with other SOFA arrangements).

Accordingly, the court concludes that plaintiffs' first amended complaint does not state a claim on which relief can be granted.

VI

Because the court concludes that plaintiffs have not stated a claim on which relief can be granted, it need not decide whether to abstain from hearing this dispute in the interest of international comity. *See Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997) (holding that international comity is not jurisdictional); *Pan E. Exploration Co. v. Hufo Oils*, 798 F.2d 837, 839 (5th Cir. 1986) ("Comity is not a binding obligation, but a discretionary decision[.]").

VII

In plaintiffs' opposition response, they request that, if the court grants Fluor's motion, it give them the opportunity to amend "to cure any issues that were raised by the parties during the briefing and/or argument on the motion to dismiss." Ps. Resp. 24. The court declines to do so.

First, given the reasoning on which the court relies in granting Fluor's motion, it is not apparent that plaintiffs can cure the defects in their case by repleading. The Afghan Labor Code does not apply to plaintiffs. And while the Code does apply to foreign citizens who have obtained or will obtain work permits, there is no suggestion in the first amended complaint or the briefing that plaintiffs or members of the putative class have obtained or will obtain work permits. Furthermore, although the court holds above that the first amended complaint fails to allege the premises for plaintiffs' contention that Fluor agreed to be bound by Afghan law, the court also points to several grounds (other than a mere pleading failure) that defeat this basis for liability. While district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, they normally do not do so where it is clear that the defects in the pleading are incurable. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.).

Second, as noted, *see supra* note 5, the court has already afforded plaintiffs an opportunity to amend their first amended complaint after evaluating Fluor's motion to dismiss. Moreover, in the court's order, it explicitly stated: "If plaintiffs opt to adopt the first amended complaint as is, and defendant establishes on renewed motion to dismiss that

plaintiffs have failed to state a claim, dismissal of that claim will likely be with prejudice *and without leave to amend*." Aug. 8, 2016 Order at 2 (emphasis added). Plaintiffs opted to stand on their first amended complaint as is. They therefore had an opportunity to cure the defects in their pleading, with full knowledge of the grounds on which Fluor was relying to seek dismissal, and with full awareness of the likelihood that dismissal of a deficient complaint would be with prejudice and without leave to amend, and they chose to make no changes to their first amended complaint.

The court therefore denies plaintiffs' request for leave to amend.

\* \* \*

Accordingly, the court grants Fluor's amended motion to dismiss and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

June 15, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE